Citation Nr: 1719082 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 13-14 194 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUES

1. Entitlement to service connection for fracture of the left tibia, status post pinning, claimed as left leg surgery.

2. Entitlement to service connection for a right elbow condition.

3. Entitlement to service connection for a left knee disability. 

4. Entitlement to service connection for right carpal tunnel syndrome (CTS).

5. Entitlement to service connection for left CTS. 


REPRESENTATION

Veteran represented by: Colorado Division of Veterans Affairs



ATTORNEY FOR THE BOARD

P. E. Metzner, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1979 to May 1982.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2012 rating decision and notification letter of the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado.

The Board notes that the Veteran initially filed a claim for service connection for chondromalacia of the left knee. However, pertinent evidence indicates that the Veteran has also been diagnosed with degenerative joint disease (DJD) of the left knee. See June 2015 VA Medical Center (VAMC) records. Accordingly, in light of the decision by the U. S. Court of Appeals for Veterans Claims (Court) in Clemons v. Shinseki, 23 Vet. App. 1 (2009), the issue has been recharacterized to encompass all left knee disabilities. 

The issues of entitlement to service connection for a right elbow condition, left knee disability, right CTS, and left CTS are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's left tibia fracture, status post pinning, was not shown in service or for many years thereafter; and the preponderance of the evidence is against a finding that it is related to the Veteran's active service or to his service-connected left ulnar neuropathy.


CONCLUSION OF LAW

Service connection for left tibia fracture, status post pinning, is not warranted. 38 U.S.C.A. §§ 1131, 5103(a), 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.307, 3.310 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

Under applicable criteria, VA has certain notice and assistance obligations to claimants. See 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In this case, required notice was met, and neither the Veteran, nor his representative, has either alleged, or demonstrated, any prejudice with regard to the content or timing of VA's notices or other development. See Shinseki v. Sanders, 129 U.S. 1696 (2009). Thus, VA's duty to notify is satisfied.

As to VA's duty to assist, the Board finds that all necessary development has been accomplished with regard to the issue decided herein, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The Veteran's VA Medical Center (VAMC) treatment records and pertinent Social Security Administration (SSA) records have been obtained. In the Veteran's May 2013 VA Form 9, substantive appeal, he also alleged that his service treatment records (STRs) had "disappeared, vanished, or been destroyed," and could not be located at the National Personnel Records Center. However, a review of the claims file shows that the Veteran's complete STRs are associated with his claims file. Additionally, the Veteran was offered the opportunity to testify before the Board, but he declined. 

The Board notes that although the Veteran was provided a March 2012 VA examination and opinion, the examiner did not specifically consider the Veteran's left tibia fracture, status post pinning. Nonetheless, as will be shown in greater detail in the discussion below, there is no need for an examination or opinion regarding this claim. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006).

As described, VA has satisfied its duties to notify and assist, and additional development efforts would serve no useful purpose. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994). Because VA's duties to notify and assist have been met, there is no prejudice to the Veteran in adjudicating this appeal.

Laws and Regulations

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131 (West 2014). Generally, the evidence must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166 -67 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 505 (1995).

Under 38 C.F.R. § 3.303(b), where the veteran asserts entitlement to service connection for a chronic condition but there is insufficient evidence of a diagnosis in service, the veteran can establish service connection by demonstrating continuity of symptomatology since service, but only if the chronic disease is listed under 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). For disabilities that are not listed as chronic under 38 C.F.R. § 3.303(b), the avenue for service connection is by a showing of in-service incurrence or aggravation under 38 C.F.R. § 3.303(a), or by showing that a disease that was first diagnosed after service is related to service under 38 C.F.R. § 3.303(d). 

VA may also establish service connection on a secondary basis for a disability that is proximately due to, or aggravated by, a service-connected disease or injury. 38 C.F.R. § 3.310(2016). In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Analysis

The Veteran contends that his left tibia fracture, status post pinning, is service-connected or secondary to his current service-connected disability. See July 2012 Notice of Disagreement. Nevertheless, the Board finds that service connection is not warranted as no relationship exists between his left tibia fracture and his active duty service or to his service-connected left ulnar neuropathy.

In this regard, the record clearly establishes that the Veteran suffered from a fracture to his left tibia in the early 1990s and underwent surgery. See October 1995 VAMC records. Although, it is not clear whether the Veteran suffers from current residuals from that surgery, for purposes of this decision, the Board concedes that he has a current disability. Element (1) of the Shedden analysis has therefore been met.

With regard to element (2) of the Shedden analysis, in-service disease or injury, the record is devoid of evidence that indicates the Veteran suffered from a left tibia fracture in service. His STRs are silent for any complaints, findings, treatment, or diagnoses related to the left leg, and on April 1983 service separation physical examination, a clinical evaluation of his lower extremities was noted to be normal. As previously noted, the record reflects that the tibia fracture and surgery occurred in the 1990s, over 8 years following service separation. Review of VAMC records reveals that in February 1992, the Veteran's fracture of the tibia and fibula appeared to be well-healed. In October 1995, he had the tibial screws removed. See October 1995 VAMC records. Accordingly, Shedden element (2) has not been established. 

For the sake of completeness, the Board will discuss element (3) of the Shedden analysis, the nexus element. Most significantly, however, there is no competent evidence of record that establishes a causal relationship between the Veteran's left tibia fracture, status post pinning, and his military service. As noted, there is no indication that the Veteran suffered a left tibia fracture in service; rather, his left tibia was fractured after his separation from service. The Veteran has also not made any contentions as to how his left tibia fracture is otherwise related to his service, other than to assert generally in his July 2012 notice of disagreement that his claimed disabilities are related to his military occupational specialty as a motor transport mechanic. As such, there is no relationship between the Veteran's left tibia fracture and his service.

Likewise, with regard to the claim for service connection on a secondary basis, there is no indication of a relationship between the Veteran's left tibia fracture, status post pinning, and his service-connected disability of left ulnar neuropathy. The record evidence clearly does not support such a connection. 

To the extent the Veteran advances his own interpretation of his medical condition indicating that his left tibia fracture, status post pinning is related to service or his service-connected disability of left ulnar neuropathy, the Board acknowledges that lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). However, the Veteran has not reported a contemporaneous diagnosis or symptoms supporting a later diagnosis. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Significantly, the Veteran has not even relayed any permanent residual of his previous left tibia fracture, status post pinning. Ultimately, the Board finds that such etiological findings are outside the realm of common knowledge of a lay person. See Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). As such, the Veteran is not competent to relate this condition to his military service or to a service-connected disability. 

Accordingly, service connection for a left tibia fracture, status post pinning, to include as secondary to a service-connected disability, is not warranted. In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, the preponderance of the evidence is against the Veteran's claim for service connection. As such, that doctrine is not applicable in the instant appeal, and his claim must be denied. See 38 U.S.C.A. § 5107(b) (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990).


ORDER

Service connection for fracture of the left tibia, status post pinning, claimed as left leg surgery is denied. 


REMAND

If VA provides a medical examination or opinion for the issue of service connection, whether or not obligated to do so, the duty to assist requires that it be adequate. Barr v. Nicholson, 21 Vet. App. 303 (2007). Adequacy occurs when the Board is able to perform a fully informed adjudication. Id. As such, VA medical examinations must be based upon consideration of the Veteran's entire history and describe the disability present. Stefl v. Nicholson, 21 Vet. App. 120 (2007); Ardison v. Brown, 6 Vet. App. 405 (1994). Additionally, VA medical opinions must be based on accurate factual premises, address all applicable theories of entitlement, and be supported by clearly and fully articulated rationale. Robinson v. Shinseki, 557 F.3d 1355 (Fed. Cir. 2009); Szemraj v. Principi, 357 F.3d 1370 (Fed. Cir. 2004); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl, 21 Vet. App. at 120; Reonal v. Brown, 5 Vet. App. 458 (1993). 

In March 2012, the Veteran underwent a VA examination to determine the etiology of his left knee disability and his right and left CTS. With regard to the Veteran's left knee disability, the examiner opined that the claimed condition is less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner's rationale was that the Veteran did not show evidence of degenerative joint disease (DJD) and that if he had significant damage to the knee 30 years ago, it would have progressed to DJD, with radiologic evidence of osteoarthritis. With regard to the Veteran's left and right CTS, the examiner opined that bilateral CTS is not service connected because it is related to his occupation as a cement finisher. The examiner stated further that the Veteran's 30 year history as a cement finisher is the most likely cause of the bilateral CTS. 

Considering the opinion above and after a thorough review of the record, the Board finds that the VA medical opinion regarding the Veteran's left knee disability is inadequate. Specifically, new evidence indicates that the Veteran, in fact, has been diagnosed with DJD of the left knee. See June 2015 VAMC records. Consequently, the March 2012 VA examiner's opinion is unsupported and based on an inaccurate factual premise. Therefore, remand is warranted for a new VA examination to determine the etiology of the Veteran's left knee disability. 

Similarly, the VA examiner's opinion is inadequate regarding service connection for left and right CTS. In pertinent part, the examiner found that the Veteran's bilateral CTS was due to his 30 year history of work as a cement finisher. However, the record contains information tending to contradict this statement. Chiefly, SSA records indicate that in the 1990s the Veteran was self-employed as a mechanic and following 1998 he had worked several jobs, none of them in construction. See SSA records. As such, this opinion appears to be supported by an inaccurate factual premise. 

Moreover, while the examiner considered the onset of CTS due to the Veteran's past work as a cement finisher, he did not consider whether bilateral CTS could be caused by the Veteran's military occupational specialty (MOS) as a motor transport mechanic. The VA examiner also did not discuss service treatment records (STRs), which showed evidence of lumps on hands following his separation exam, but prior to service separation. See May 1983 STRs. Thus, on remand, the VA examiner must discuss the STRs indicating lumps on hands and whether they are related to his diagnosis of bilateral CTS and the likelihood that the Veteran's CTS is due to his MOS as a mechanic. 

The record evidence indicates that the Veteran's right elbow condition may be due to or aggravated by his right CTS. See June 2009 VAMC records. As such, the Board finds that the claims are inextricably intertwined and, thus, the claim for a right elbow must be remanded for contemporaneous adjudication. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (holding that where a claim is inextricably intertwined with another claim, the claims must be adjudicated together in order to enter a final decision in the matter).

Accordingly, the case is REMANDED for the following actions:

1. Obtain all relevant and outstanding VAMC records and associate them with the claims file. All attempts to obtain these records must be documented in the file.

2. Thereafter, obtain a VA examination and opinion from an appropriate examiner to determine the nature and etiology of (1) any left knee disability, (2) right CTS, (3) left CTS, and (4) any right elbow condition. The Veteran's claims file (to include this decision) must be reviewed by the examiner in conjunction with the examination. Upon examination and interview of the Veteran, and review of pertinent medical history, the examiner should provide opinions responding to the following:

(a) What are the diagnoses for the Veteran's current left knee disabilities? For each left knee disability diagnosed, please provide an opinion as to whether such is, at least as likely as not (50 percent or better probability) related to the Veteran's service. 

(b) Whether right CTS is at least as likely as not (50 percent or better probability) related to the Veteran's service or caused or aggravated by a service-connected disability. In formulating his/her opinion the examiner is requested to specifically discuss the STRs indicating lumps on hands and the likelihood that right CTS is related to the Veteran's MOS as a mechanic. 

(c) Whether left CTS is at least as likely as not (50 percent or better probability) related to the Veteran's service or caused or aggravated by a service-connected disability. In formulating his/her opinion the examiner is requested to specifically discuss the STRs indicating lumps on hands and the likelihood that left CTS is related to the Veteran's MOS as a mechanic. 

(d) What are the diagnoses for the Veteran's current right elbow condition? For each right elbow condition diagnosed, please provide an opinion as to whether such is, at least as likely as not (50 percent or better probability) related to the Veteran's service or caused or aggravated by a service-connected disability. 

The examiner is advised that the Veteran is competent to report his symptoms/history and that such reports must be acknowledged and considered in formulating any opinion. If his reports are discounted, the examiner should provide a reason for doing so.

A rationale for all requested opinions shall be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she shall provide a complete explanation stating why this is so. In so doing, the examiner shall explain whether the inability to provide a more definitive opinion is the result of a need for additional information or that he or she has exhausted the limits of current medical knowledge in providing an answer to that particular question.

3. After the requested development has been completed, the RO shall review and readjudicate the claims on appeal. If the decision is adverse to the Veteran, he and his representative shall be furnished a Supplemental Statement of the Case (SSOC) and provided with the opportunity to respond. Thereafter, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
A. ISHIZAWAR
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs